## HABEL *v.* JEANNOT.

1. SPECIFIC PERFORMANCE—DISCRETION OF COURT—JUDICIAL DIS-
CRETION.
   While the granting or refusing of specific performance
   is discretionary, the discretion to be exercised is a ju-
   dicial, and not an arbitrary one.

2. SAME—OPTION TO PURCHASE STOCK—EVIDENCE—SUFFICIENCY.
   On defendant's cross-bill for the specific performance of
   an option contract to purchase plaintiff's stock in a
   corporation doing a foundry business, the decree of the
   court below in favor of defendant, *held*, justified by the
   record, although the evidence was contradictory.

Appeal from Muskegon; Vanderwerp (John), J.
Submitted October 11, 1921. (Docket No. 83.) De-
cided December 21, 1921.

Bill by Charles E. Habel against William E. Jeannot
for an accounting and the transfer of certain corpo-
rate stock. Defendant filed a cross-bill for the specific
performance of an option contract. From a decree
for defendant, plaintiff appeals. Affirmed.

*Alex. Sutherland,* for plaintiff.

*Cross, Foote & Sessions,* for defendant.

FELLOWS, J. This case presents only questions of
fact which were determined adversely to plaintiff's
contentions by the trial judge upon conflicting testi-
mony. The record is not a lengthy one but it is re-
plete with contradictions upon the material issues.
We shall only detail such claims and facts as may be
necessary to a disposition of the case. The Eagle
Iron Works, a corporation with $5,000 capital stock

all owned by plaintiff and his family, was doing a foundry business at Muskegon. We are satisfied, notwithstanding the conflicting evidence, that it was hard pressed for money. It was doing business in a small way. Absalom Shaw had also been engaged in like business at Muskegon and had been successful and had sold out his interests and was quite forehanded. He was a practical foundry man, and he and defendant, who was a successful business man with considerable means, had been associated together in the successful business recently sold. Plaintiff offered to sell Mr. Shaw one-half of the stock of the Eagle Iron Works for $5,000; he also discussed with him a loan of that amount. Mr. Shaw was going to California to spend the winter, but before leaving deposited $5,000 to plaintiff's credit in the bank. This was used by plaintiff in paying debts of the corporation. Shortly after Mr. Shaw's arrival in California he discussed with defendant, who was also in California for the winter, the proposition of defendant becoming associated in the company to look after the business end. Defendant sent plaintiff a night-letter asking for information about the company, and plaintiff furnished it in a letter in which he told defendant he had sold one-half the stock to Mr. Shaw and that neither of, them were to sell their stock to any one without first giving the other an opportunity to buy. He expressed a willingness that Shaw might sell half of his interest to defendant. Defendant made no reply to this letter. We are satisfied from the testimony that he concluded that he did not care to invest any money in the company and did not care to become interested in it unless the three could have equal holdings and that he so informed Mr. Shaw. We are likewise satisfied that Mr. Shaw was anxious to secure for the company the benefit of his business experience and the financial aid he could bring to it.

Mr. Shaw and defendant both returned to Muskegon in the spring of 1919. Mr. Shaw turned over to the company soon after his return from California a further sum of $5,000. The crucial question in the case revolves around this item of $5,000. The plaintiff claims that he was deceived in this transaction; that he was led to believe and did believe that this $5,000 was payment for a one-third interest for defendant in the corporation. Defendant insists that this was a loan, for that amount to the company and was so understood by all the parties, including plaintiff. Mr. Shaw had died before the hearing but defendant produced on the hearing the note for this identical $5,000 signed by the plaintiff for the company and showed that it was carried on the company's books as a liability and it had been paid by the company out of company funds. He also produced a note given plaintiff by the company for the $5,000 Mr. Shaw deposited to his credit before he went to California and which he had used in the payment of the debts of the corporation. He also produced a carbon copy of a receipt claimed to have been given by plaintiff to Mr. Shaw shortly after his return from California for the first $5,000, which recited that it was "in full payment for two-thirds ($3,333.33 1-3) of the capital stock of the Eagle Iron Works," and proved the signing of the original by plaintiff. In fact, it should be stated that plaintiff's claim is only supported by his own testimony and that defendant's claim is supported by all the disinterested testimony and all the documentary proof.

On May 1st, Mr. Shaw and defendant entered into an agreement by the terms of which Mr. Shaw undertook to make all necessary arrangements to procure for defendant a one-third interest in the corporation, the other two-thirds to be owned by Shaw and plaintiff, and to accept a note from defendant for the pur-

chase price to be paid out of the profits of the business and also agreed to assist in financing the company to a stated amount.    The contract also recited that Mr. Shaw was making the agreements he did to secure the benefits of defendant's business experience for the company, defendant agreeing to furnish such business experience to its affairs.    A new corporation was organized which took over the assets and assumed the liabilities of the old one.    Each of the parties received one-third of the issued stock.    Plaintiff was superintendent of the plant but under his management it was not very successful.    By agreement of the parties a Mr. Misch was substituted, and plaintiff became subordinate.    The business showed a material increase.    Defendant by his indorsement of company paper secured $20,000 for the company which had been increased to $35,000 at the time of the trial.    But friction developed between plaintiff and Mr. Misch and finally it was agreed that plaintiff should draw a salary of $50 a week and stay away from the plant.    At the same time defendant gave him an option to purchase at $10,000 his and the Shaw stock which he had acquired after Mr. Shaw's death. And plaintiff gave him a like option on his stock for $5,000.    Plaintiff did not exercise his option, but defendant did his, and before its expiration tendered plaintiff $5,000 and demanded the stock.

By this bill plaintiff seeks an accounting from defendant for the value of the stock held by him in excess of one-half of the issued stock on the ground that he was defrauded as hereinbefore stated.    He also seeks to compel defendant to turn over to him one-half of the stock purchased from Mr. Shaw's widow at the price defendant paid her.    Defendant by way of cross-bill sought and was decreed specific performance of his option to purchase plaintiff's stock.    As we have indicated, plaintiff's claim has

the support of his own testimony alone, defendant's has support in the testimony of disinterested witnesses and the documentary proof. While it is undoubtedly true that the original arrangement between plaintiff and Shaw contemplated a sale of but one-half of the stock for $5,000, the documentary evidence is convincing that after his return from California he made a new arrangement, the one finally carried out. He is not here to testify, but the fact that a note was given him for the second $5,000 put in and that it was signed by plaintiff for the company, and a like note was then given to plaintiff for his $5,000 which had been used to pay debts of the company, and that plaintiff about the same time signed a receipt for the first $5,000 and acknowledged that it was "in full payment for two-thirds" of the stock, when taken in connection with what followed, make silent evidence of convincing force against the claim that plaintiff now asserts. He did not bring this action until over 14 months after the time he claims he was defrauded, and over 7 months after he gave the option to defendant and ceased his work at the plant, and not until he was removed from the payroll. We agree with the trial judge that the weight of the evidence is with the defendant.

Plaintiff insists that he is entitled to a proportional share of the stock sold by Mrs. Shaw to defendant at the price he paid for it. He claims an arrangement was originally made with Mr. Shaw that each should have the first option to purchase, and he harks back to the letter sent by him to defendant in California in which he so stated. But, as we have seen, the old corporation was wiped out and the old arrangement gave way to the new one which was put in operation. No by-law of the new company so provided, and no such provision was made in the new arrangement, and after plaintiff knew that defendant had acquired

this stock he gave an option to him to sell his stock for $5,000 and took one from defendant agreeing to sell his original stock together with that purchased from Mrs. Shaw for $10,000. After the giving of these options and the elimination of plaintiff from the plant management, defendant increased his indorsements of company paper and has made the enterprise a success. There is no equity in plaintiff's claim.

The granting or refusing of specific performance is discretionary. But the. discretion to be exercised is a judicial, not an arbitrary, one. We are unable to perceive from this record any reason which should justify us in the exercise of a judicial discretion in withholding such relief. For something like 12 years plaintiff had conducted the foundry without marked success. At the end of this time he was heavily involved and turned to Mr. Shaw for financial assistance. Before the plant became a success plaintiff had to be eliminated. Thereafter defendant by his business acumen and his financial strength had made it a success. Plaintiff by the decree was required to transfer his remaining interest in the company on payment of $5,000. Upon the carrying out of the decree of the court below plaintiff will have received $10,000 for a business which when Mr. Shaw came to his relief was, to say the least, in a precarious condition; defendant will have the benefit of the energy he has exerted in making the business a success and will be in position to protect his indorsements.

The decree was right and will be affirmed, with costs of this court.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.